IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| KEMONTAE HOBBS, | ) | Jury Trial Demanded |
| | ) | |
| | ) | CASE NO: |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| | ) | |
| | ) | |
| CITY OF HUNTSVILLE; | ) | |
| OFFICER CHRISTOPHER SHAUN GLASER | ) | |
| in his individual and official capacity; | ) | |
| OFFICER CAMERON BEATTY in his | ) | |
| individual and official capacity; and | ) | |
| MAPCO EXPRESS, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANTS | ) | |

## COMPLAINT

COMES NOW, Plaintiff, Kemontae Hobbs, who alleges the following facts, asserts

the following causes of action, and seeks to recover the following damages against

Defendant Christopher Shsaun Glaser; Defendant Police Officer Cameron Beatty,

the City of Huntsville and Mapco, Incorporated.

## Parties, Jurisdiction and Venue

1. Plaintiff Kemontae Hobbs is above the age of 19 years old and resides in Madison County, Alabama.

2. The Defendant, the City of Huntsville, is an Alabama Municipal Corporation that duly organized the Huntsville Police Department (referred to throughout the complaint now as "HPD") and authorized its policies, procedures, customs, and practices which govern the duties and actions of its police officers. The City can be served through its City Clerk at 308 Fountain Circle (City Hall), 3rd Floor, Huntsville, Alabama 35801.

3. The Defendant, Christopher Shaun Glaser, is a resident and citizen of Madison County, all Defendant's actions set forth in this complaint were done within the course and scope of his employment with the City, and under color of Alabama State Law.  Defendant is being sued in his individual and official capacity.

4. The Defendant, Cameron Beatty, is a resident and citizen of Madison County, all Defendant's actions set forth in this complaint were done within the course and scope of his employment with the City, and under color of Alabama State Law.  Defendant is being sued in his individual and official capacity.

5. Defendant Mapco Express Inc., aka/bka/dba Mapco Inc. is  a foreign corporation, located within this district within the city limits of Huntsville, AL and having a Registered Agent of Richard Gill, 444 South Perry St.,

Montgomery, AL 36104 and a principal address of 801 Corporate Centre Drive, Ste. 300, Franklin, TN 37607

6. This court has subject matter jurisdiction over Count 1 pursuant to 28 U.S.C. 1331 because it alleges violations of the United States Constitution and 42 U.S.C. 1983. This Court has supplemental federal jurisdiction pursuant to 28 U.S.C. 1367(a) over Count 2, which asserts any applicable pendent state law claims.

7. Venue is proper in this division and district under 28 U.S.C. 1391 (b) (2) because a substantial part of the events or omissions giving rise to the claim occurred in this division and district. Venue is also proper in this division and district pursuant to 28 U.S.C. 1391 (b)(1) and (c)(2) because both HPD Officers Christopher Shaun Glaser and Cameron Beatty and the City reside in this division and district under the meaning of this statute.

8. This is an Fourth Amendment unconstitutional seizure, excessive force, false imprisonment case filed on behalf of Kemontae Hobbs.

9. Over the course of years, the City has repeatedly failed and refused to address widely known systemic deficiencies regarding the use of force by HPD police officers especially as it pertains to those who have a mental illness or mental impairments.

10. While the City had written policies and procedures prohibiting the use of excessive force, the City also had, and continues to maintain, an unwritten

3

custom and practice established years prior to the subject May 30, 2021 unconstitutional seizure incident, of refusing to discipline and hold accountable officers who use unconstitutional, excessive and/or unskillful force in the line of duty of their duties as police officers, whether by shooting or otherwise.

11. Specifically, the City established a "Board" which ostensibly gave the appearance that the City was closely examining and reviewing each instance of force resulting in serious injury or death.

12. During the many years preceding this use of excessive force incident on May 30, 2021 the "board" invariably determined that the officer's force was proper and acceptable, even when the officer violated policy and/or used excessive, unconstitutional, and/or unskillful force. Upon information and belief, the supervisors of the board were rarely, if ever, critical of an HPD officer's use of force, and even when a critical, no real discipline, education, or training was ever imposed.

13. Instead, the City controlled the "board," not only by having the City Attorney's Office sit in on the meetings but, more importantly, by restricting all decisions to three HPD supervisors picked by the HPD Chief of Police and as described below. Although the Madison County's District Attorney's Office and the Citizens Advisory Council are considered part of the "board" this appears to be in name only as neither are involved in any discussion or determination as to whether an officer violated policy or used excessive, unconstitutional, and/or

unskillful force, and neither is entitled to vote or have any say in whether officers should face disciplinary action or receive more education and training.

14. In so doing, the City established a custom or practice of condoning excessive, unconstitutional, and/or unskillful force -- a custom and practice that all HPD officers knew would always protect them if they used excessive, unconstitutional, and/or unskillful force.

15. Because of this custom and practice, the HPD officers subjectively believed, and had good reason to know, that they would never suffer any negative consequences for using excessive, unconstitutional, and/or unskillful force, including excessive, unconstitutional, and/or unskillful deadly force. Thus, the custom and practice resulted in encouraging HPD officers to use excessive, unconstitutional and/or unskilled force.

16. The City was subjectively aware of the risk of harm of such a custom and policy but, despite its knowledge, took no action to stop the custom and practice and thus knowingly allowed it to continue. The City and its governing officials knew this custom and practice created a substantial risk of serious harm, and the deprivation of constitutional rights, to residents, citizens, and guests in Madison County. They also knew the continuance of the custom and policy would result in the infliction of unnecessary pain and suffering by those who interacted with the HPD. They were on notice of the custom and practice from complaints, communications from correctional officers, from their own

5

observations, from common sense, from other injuries and death, from other lawsuits and by other ways. Some (but not an all-inclusive list) of prior instances are as follows.

17. We start with the incident involving Jeffery Parker that occurred on April 3, 2018 just over a three years prior to the incident involving Kemontae Hobbs.[1] Parker called 911 and reported that he was suicidal.  Two senior officers responded to this call and were by all accounts de-escalating the situation. Officer Ben Darby, who was en route to the precinct, heard the call and rushed to the scene. Darby, completely ignorant of what was going on inside and of the efforts and progress of the initial responding officers, pushed past those officers and inserted himself between them and Parker. Within 11 seconds of entering the house Darby shot Parker in the mouth despite Parker not making any threatening movements.

18. Furthermore, it is widely known that the two original responding officers in the Darby case were sent to remedial training.[2]  Darby, however, was never disciplined despite being charged with murder.

19. The City's position on the treatment of mentally ill individuals has evolved into one that requires quickly escalating police-citizen interactions without trying to

_____

[1] see case number 5:20 CV-430-LCB- Martinson v. Darby, HPD.

first deescalate the situation in direct violation of the consensus of the mental health community on the correct way to address such circumstances. [3]

20. In addition to the Parker shooting, there have been numerous instances of excessive force committed against individuals by the HPD, demonstrating a pattern and practice.[4]  Upon information and belief, the three HPD supervisors found that the HPD officers acted appropriately in all of these instances.

21. It was well known to HPD officers, that the City had a custom and practice of allowing its officers to use excessive, unconstitutional, and/or unskillful force. The HPD officers, including Darby, had this knowledge from the incidents described above, from other similar incidents that occurred over the years, from their conversations with each other and with their superiors, through their daily observations regarding how HPD officers used force, and in other ways.

22. On or about May 31, 2021 the Plaintiff, was inside of the Mapco Gas Station located within Huntsville, Alabama.

23. To wit, an employee called the Police to report Mr. Hobbs as trespassing. Several officers arrived at the Mapco Gas station shortly thereafter.

24. That an employee of Mapco Inc., pretextually accused the Plaintiff of engaging in prohibited behavior in that he was "panhandling."

---

[3] see *Burton V. City of Huntsville,* et. Al  5-22 Cv -629-LCB

[4] See *Martinson V. Darby, et.al* - statement of facts 17-21; See also *Sampson V. City of Huntsville*  5:13 CV 2161 - strip search case from 2013

25. To wit, other non-African American shoppers/patrons, were allowed to "panhandle" and/or shop freely within the convenience store owned and operated by Mapco Inc.

26. Mr. Hobbs, suffers from a number of mental health issues, including schizophrenia, and was unable to understand commands given by the officer. Mr. Hobbs has been prescribed a number of mental health medications including lithium, sertraline and quetiapine which have a number of side effects. It is also believed that Mr. Hobbs has developmental/ intellectual disabilities and is of low intelligence.

27. This encounter was videos by a bystander and disseminated on Facebook and other social media apps and or sites and viewed hundreds of thousands of times.

28. The video shows one officer, Defendant Glaser, stomping and kicking on Mr. Hobbs , who was already restrained, at least four times with force on his leg/ knee yelling "stomp resisting" with each stomp without giving him an opportunity to further comply.

29. Mr. Hobbs was pretextually charged with "obstructing government operations" and "resisting arrest".

30. Furthermore, it is believed that a taser was deployed illegally and excessively against Mr. Hobbs during this incident.

31. It is widely known by the City of Huntsville Police department that Mr. Hobbs suffers from schizophrenia and may have other developmental/ intellectual

8

disabilities. Mr. Hobbs is known for walking on University Drive and numerous officers knew or should have known about his mental illness. Mr. Hobbs has had numerous interactions with the Huntsville Police Department.

32. The City of Huntsville has a long history for failing to properly train officers and respond appropriately in dealing with individual suffering from mental illness.

33. The City of Huntsville is deliberately indifferent to a comprehensive mental health policy based on numerous complaints and filed lawsuits as it pertains to treatment of citizens with mental health issues. The issues have been covered extensively by local media and also different national media entities.

34. On July 24, 2020, The Washington Post published an article highlighting the City's inadequate training for mental health calls. The article followed a Washington Post reporter's shadowing of an HPD officer in June 2020. While the reporter was shadowing, the officer responded to a mental health call in Huntsville's North Precinct. After the call, the HPD officer expressed to another officer: "Dude I really envisioned her grabbing a [] gun. . . . I really did. . . . I was like, 'we're gonna smoke this woman.'" *Post Reports: Can Police Learn to De- Escalate?*, at 18:00–18:50 (Washington Post Jul. 30, 2020), https:// www.washington post.com/podcasts/post-reports/can-police-learn-to-

9

deescalate/. The article quotes the same HPD officer stating: "One class is not enough."

35. Moreover, in the years leading up to May 30, 2021, the City's implicit custom, policy, and practice took the approach of encouraging HPD officers toward acts of aggression and escalation, rather than de-escalation, when encountering individuals suffering from intellectual/developmental, or mental health disabilities, or other emotionally disturbed persons.

36. Upon information and belief, prior to June 2021, HPD offered no training to allow its average officer on patrol to reasonably distinguish between drug abuse and other suspicious behavior and symptoms of severe intellectual/ developmental disability.

37. This City of Huntsville has begun to take steps to deal with the treatment of mentally ill individuals including a co-responder program. By implementing these policies the City of Huntsville has recognized that its policies were inadequate.

38. Mr. Hobbs was treated at Huntsville Regional Hospital after the incident for injuries to his back and leg because of this incident and also received some mental health counseling.

39. At least one former Huntsville City Council member and one current Huntsville City Council member admitted publicly that the officers did not respond appropriately in this instance.

10

40. News reports indicated that at least one officers was disciplined for acting outside of his duties as related to this incident. [5]   The City of Huntsville specifically states  "One of the responding officers was found to have acted outside of applicable HPD policy and did not adhere to the training provided by HPD."

41. Despite the City taking disciplinary action in this case, the City of Huntsville has taken the default position to not discipline in most cases ,including the officers involved in the treatment of Parker and Burton.  This case is very similar to the Burton case where the young man with intellectual/developmental disabilities was treated like someone using illegal drugs.  Furthermore, the Plaintiff believes that the disciplinary action was just window-dressing and a public relations stunt only finding that one officer  acted outside of policy opposed to all officers who failed to properly deal with a situation involving a mentally ill/ developmentally citizen.

42. Furthermore, the Plaintiff contends that the officer was not proportionally disciplined in relation to the excessive amount of force used in this incident

43. Plaintiff asserts that those officers present witnessing the brutal and unprovoked beating of an unarmed mentally disabled 22 yearly man had a duty in intervene and failed to do so. At a minimum, at least one of the officers present should

---

[5] https://www.huntsvilleal.gov/huntsville-police-officer-actions-ruled-out-of-policy/

have been trained to realize that Hobbs had developmental/intellectual disabilities.

## COUNT ONE: EXCESSIVE FORCE UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS GLASER, BEATTY, AND HUNTSVILLE

44. Each of the paragraphs of the Complaint is incorporated as if fully restated herein.

45. This cause of action is brought against HPD Officers Glaser and Beatty and the City pursuant to 42 U.S.C. 1983, the Fourth Amendment as applied to the states via the due process clause of the Fourteenth Amendment, 42 U.S.C 1988.

46. HPD Officers Glaser and Beatty, while acting under color of law, deprived Ragland of her Fourth Amendment right to be free from excessive or unreasonable force during an arrest or seizure.

47. As described above, HPD Officers Glaser and Beatty subjected Hobbs to excessive and unreasonable force when he was kicked, stomped, beaten and choked.  Hobbs did not pose an immediate threat of harm to any HPD Officers, store attendant, or any member of the public.  In fact, law abiding citizen, invitee, shopping at a neighborhood convenience store. No reasonably prudent officer, faced with similar circumstances, would have acted as HPD Officers Glaser or Beatty.

48. HPD Officer Glaser and Beatty unconstitutional and excessive acts of force against Hobbs were done with deliberate indifference and a callous disregard of Hobb's Fourth Amendment rights.

49. HPD Officers Glaser and Beatty use of excessive force was caused, in part by the unconstitutional and deliberately indifferent customs and practice of the City as set forth above. These 1983 claims against the City are not brought pursuant to the doctrine of respondeat superior, but pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) and its progeny, because the City had a custom and practice that constituted a deliberate indifference to Hobbs constitutional rights that was the moving force behind Hobbs unconstitutional and excessive use of force.

50. The City and its HPD supervisors and policymakers subjectively knew that their customs and practices in failing to discipline and/or educate officers who had used unconstitutional and excessive force would result in more instances of excessive force, serious injury, harm, and/or death. They were not only aware of the facts from which these conclusions could be drawn, they in fact each subjectively drew such conclusions. Nevertheless, they disregarded the risk to those like Hobbs who encounter HPD officers, and in so doing they acted with more than gross negligence.

51. The City's unconstitutional policies were the driving force behind HPD Officers Glaser and Beatty use of unconstitutional and excessive force. As a direct and

13

proximate result of the combining and concurring unconstitutional conduct of the responding officers and the City, Hobbs was injured.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court (1) to enter judgment against HPD Officers Glasser and Beatty and the City (2) to award him, in an amount determined by the jury, for compensatory damages arising out of her death according to federal common law remedy, including, but not limited to, lost wages and benefits, and future earning capacity; (3) to award her attorney fees, expert witness fees, court costs, and interest as allowed by law; and 4) specific injunctive relief as it applies to forced reform of internal City of Huntsville Police Department Review boards, makeup of that board and oversight of that board and 5) to award her all other relief as the Court deems proper.

### COUNT TWO: COMMON LAW NEGLIGENCE AND WANTONNESS AGAINST DEFENDANTS GLASER and BEATTY

52. Each of the paragraphs of this Complaint is incorporated as if fully related herein.

53. Defendant HPD Officers Glaser and Beatty negligently and/or wantonly shot Ragland in violation of: (1) the standard of care applicable to police officers; (2) the specific, mandatory, and non-discretionary duties prescribed by the HPD for performing his work; (3) failure to undergo mental health specific training; (4)

14

failing to adhere to Alabama Code standards of calling a mental health worker; and 5) the Fourth Amendment to the U.S. Constitution.

54. The Defendant HPD Officers Glaser and Beatty in this incident failed to comply with Ala Code Section 22-52-91 which would have dictated calling a community mental health officer to assist in this situation.

55. In so doing, Defendant HPD Officers Glaser and Beatty acted with neglect, carelessness, or unskillfulness and/or acted willfully, maliciously, in bad faith, recklessly, beyond his authority or under a mistaken interpretation of the law.

56. Defendant HPD Glaser and Beatty were acting in the line and scope of their employment with the City, making the City vicariously liable under the doctrine of respondeat superior and Ala Code 11-47-190 for their negligent careless, and unskillful use of force.

57. WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court: (1) to enter judgment against HPD Officers Glaser and Beatty and the City (2) to award her in an amount determined by the jury, compensatory damages3) to award court costs, and interest as allowed by law; and 4) specific injunctive relief as it applies to forced reform of the internal City of Huntsville Police Department Review board, makeup of that board and oversight of that board 5) to award her all other relief as the Court deems proper.

15

**COUNT THREE: MONELL LIABILITY INADEQUATE POLICY AGAINST CITY OF HUNTSVILLE**

58. Each of the paragraphs of this Complaint is incorporated as if fully related herein.

59. At all times material herein, the City had a legal duty to adopt and implement rules and procedures to ensure that its police force appropriately restrain citizens in a manner which is safe to all parties and necessary under the circumstances specifically as it applies to mentally ill citizens.

60. This duty included, but was not limited to the duty to create, adopt, and implement rules, regulations, practices, and procedures which clearly direct police officers as to the appropriate use of force under relevant circumstances specifically as it applies to mentally ill citizens.

61. The City's failure to adopt appropriate treatment of mentally ill individuals involved in police encounters amounts to unconstitutional policy under 1983 as discussed in Monell.

62. By taking a position that aggressive interactions are preferred over de-escalation the City of Huntsville sent a message to officers that they could in fact face consequences for trying to deescalate situations.

63. In addition to the unconstitutional custom, policy and practices alleged herein, the HPD in this incident failed to comply with Ala Code Section 22-52-91

which would have dictated calling a community mental health officer to assist in this situation.

64. The City has by custom and practice changed its internal standards to be different than the national standards of what is considered reasonable force. This approach and position conflicts with criminal and civil laws and is inconsistent with national standards and constitutional mandate.

65. The officers in this incident announced that there were many things that could be done to handle or deal with a mentally ill individual. However, it does not appear that they took any of those steps or what would be considered reasonable steps dealing with a mentally ill individual.

66. The city knew or should have known that the failure to establish a custom, policy, or practice regarding proper use of force under relevant circumstances would result in repeated instances of excessive force by reason of carelessness, recklessness, deliberate indifference, or other culpable conduct.

67. As a proximate cause of the City's unconstitutional policy and deliberate indifference to the same, Kemontae Hobbs was brutally beaten and sustained severe physical injuries.

68. Plaintiff seeks compensatory damages, costs, attorneys' fees, interest, and any other relief allowed under law.

69. WHEREFORE PREMISES CONSIDERED, the Plaintiff seeks the following relief (a) an award of compensatory and punitive damages in an amount to be

17

determined by a jury (b) an award of court costs, interest, and reasonable attorney's fees as provided under 1983 and (c) specific injunctive relief mandating reform of the internal City of Huntsville Police Department Review board, makeup of that board and oversight of that board and changing HPD policies to comport with constitutional requirements regarding use of force. (d) any other relief which is found to be proper under the circumstances.

## COUNT FOUR: ASSAULT AND BATTERY BEATTY, GLASER, & CITY OF HUNTSVILLE

70. Plaintiff re-alleges and incorporates herein all of the preceding allegations.

71. Defendant HPD Officers Beaty and Glaser, as a result of poor and/or improper training and supervision, negligently assaulted and battered Hobbs by beating him, kicking him, and tasing him without any provocation whatsoever.

72. The assault and battery of Hobbs was unlawful and unjustified and without provocation or just excuse. Defendants were acting in the line of his duty at the time, albeit incredibly carelessly, unskillfully and/or based on a misinterpretation of the law.

73. Hobbs sustained damages including physical injury as a result of the assault and battery.

74. Huntsville is liable under Ala. Code 11-47-190 because Defendants Glaser and Beatty's actions were with careless disregard for Hobbs' well being.

18

WHEREFORE PREMISES CONSIDERED, Plaintiff seeks the following relief: Compensatory damages in an amount which is fair and reasonable; Punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action; Attorney's fees; Such other and further relief as the Court deems fair and proper under the circumstances.

## COUNT FIVE: NEGLIGENT AND WANTON HIRING, TRAINING, AND SUPERVISION (MAPCO, INC.)

75. Plaintiff re-alleges and incorporates herein all of the preceding allegations.

76. Defendant Mapco Inc., were negligent and/or wanton in their hiring, training, monitoring, supervising, or continuing to employ the relevant attendant and others involved in the arrest and prosecution of Plaintiff Hobbs.

77. Defendant Mapco Inc., were negligent and/or wanton in their implementation of policies and procedures that encourage asset protection associates and other employees to initiate criminal complaints based on false statements, or at the very least without properly investigating the truthfulness of the allegations.

78. Defendant Mapco Inc., negligently and wantonly train and supervise their employees by implementing policies and procedures which actually encourage false arrests and prosecutions.

79. Defendant Mapco, Inc. deliberately fails to review allegations made by the lowest member of the asset protection department for accuracy, and Wal-Mart has implemented no policy or procedure for reviewing or following up on evidence of false arrest or malicious prosecutions despite overwhelming evidence that this frequently occurs.

80. Defendant negligently or wantonly train, supervise, or retain employees by providing no reprimands or discipline or even additional training to those employees who instigate false or meritless arrests.

81. As a result of the defendants' misconduct, the plaintiff has suffered damages.

82. WHEREFORE PREMISES CONSIDERED, the Plaintiff demands judgment against the Defendant Mapco Inc., for compensatory and punitive damages in an amount to be determined by the jury.

## COUNT SIX: FALSE ARREST/FALSE IMPRISONMENT

83. Plaintiff re-alleges and incorporates herein all of the preceding allegations.

84. The defendants knew or should have known that this information would be used by law enforcement to arrest Plaintiff Hobbs.

85. The defendant Mapco Inc. had in their possession, custody, or control irrefutable evidence(such as surveillance video and eyewitness testimony) that Plaintiff Hobbs did not commit and otherwise was not guilty of the charges

20

initiated by the defendants. Nevertheless, the defendants suppressed or otherwise failed to disclose this critical information to law enforcement.

86. As a direct and proximate result of the false information the defendants provided to law enforcement, or as a direct and proximate result of Defendant Mapco, Inc., suppression of or failure to disclose relevant evidence to law enforcement, Plaintiff Hobbs was wrongfully arrested, imprisoned, and deprived of her personal liberty.

87. As a direct and proximate result of the defendant's misconduct, Plainitff Hobbs has suffered damages as set forth above.

88. The defendant Mapco Inc. have engaged in a pattern and practice of similarly falsely arresting Alabama citizens.

WHEREFORE, the Plaintiff demands judgment against the Defendant Mapco Inc., for compensatory and punitive damages in an amount to be determined by the jury.

## COUNT SEVEN: 1981 RACIAL DISCRIMINATION

89. Plaintiff re-alleges and incorporates herein all of the preceding allegations.

90. Plaintiff is a Black man.

91. Plaintiff was subjected to racial harassment and discrimination as in that he was (a) falsely accused of loitering (b) otherwise pretextually charged with obstruction of government operations and resisting arrest (c) trespassed from the store for actions that other non-black/AA were permitted to engage

including "panhandling" all to wit - based on the actions of Defendant Mapco Inc., its employees, agents, etc., as described herein above at Defendant Mapco Inc.'s place of business, causing interference with Plaintiff's right to access and shop with the local neighborhood convenient store.

92. Plaintiff was prevented from shopping or engaging in permitted lawful behavior at the Defendant Mapco Inc.'s convenience store location because of his race, while white and non-blacks were not prevented from the same.

93. The actions of the Defendant in harassing and discriminating against the Plaintiff were taken intentionally and because of the Plaintiff's race.

WHEREFORE, the Plaintiff demands judgment against the Defendant Mapco Inc., for compensatory and punitive damages in an amount to be determined by the jury.

## Jury Demand

Plaintiff requests a trial by jury on all factual issues, including damages.

Respectfully submitted this the 30th of May 2023,

/s/ Martin Weinberg
Attorney for Plaintiff
PO Box  154 Shannon, AL. 35142
Phone 205-910-3722
Fax 205-413-8717
attorneyweinberg@bellsouth.net

/s  Richard Rice

22

Attorney for Plaintiff
The Rice Firm LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL. 35203
205-618-8733
rrice@rice-lawfirm.com

PLEASE SERVE DEFENDANTS AS FOLLOWS:

MAPCO EXPRESS INC.
Registered Agent of Richard Gill, 444 South Perry St.,
Montgomery, AL 36104

City of Huntsville
City Clerk at 308 Fountain Circle (City Hall),
3rd Floor, Huntsville, Alabama 35801

Defendant Cameron Beatty
City Clerk at 308 Fountain Circle (City Hall),
3rd Floor, Huntsville, Alabama 35801

Defendant Christopher Shaun Glaser
City Clerk at 308 Fountain Circle (City Hall),
3rd Floor, Huntsville, Alabama 35801