UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KEMONTAE HOBBS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | ) Civil Action No. 5:23-cv-00693-CLS |
| | ) |
| **CITY OF HUNTSVILLE,** *et al.,* | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION

Jurisdiction of this civil action is based primarily upon 42 U.S.C. § 1983, because the plaintiff's chief contention is that defendants — *i.e.*, the City of Huntsville, Alabama, and two of that municipality's uniformed police officers, Christopher Glaser and Cameron Beatty — abridged his Fourth and Fourteenth Amendment right to be free of the use of excessive force when effecting an arrest.[1]

---

[1] Doc. no. 37 (Amended Complaint), ¶¶ 53-61 (Count One).  The code provision cited in text authorizes private parties to enforce federal constitutional rights (and some federal statutory rights) by bringing suit against state or municipal governmental entities and officials whose conduct under color of state law deprived a person of rights, privileges, or immunities secured by the U.S. Constitution or statutes.  It reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

In addition, this court possesses, pursuant to 28 U.S.C. § 1367(a),[2] supplemental jurisdiction over the plaintiff's state-law claims of negligence and wantonness,[3] assault and battery,[4] and false arrest and imprisonment.[5]

After the parties filed a notice stating that all of plaintiff's claims had been resolved, pending judicial approval of defendants' agreement to pay plaintiff the sum of $15,000.00,[6] this court conducted hearings on May 12 and June 18, 2025, to determine whether the terms of the proposed settlement were fair, reasonable, and conservative of the best interests of plaintiff, Kemontae Hobbs.[7]  Following consideration of the pleadings, evidence, and arguments of counsel, the court makes the following findings.

1. All claims asserted against defendants in plaintiff's amended complaint (doc. no. 37) stem from his arrest on May 30, 2021, at a MAPCO® gasoline station and convenience store located on the southwestern corner of the intersection of University Drive with North Memorial Parkway in Huntsville, Madison County, Alabama.  An

---

[2] The pertinent portion of the statute cited in text provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

[3] Doc. no. 37 (Amended Complaint), ¶¶ 62-67, at 17-18 (Count Two).

[4] *Id*. ¶¶ 82-86, at 21-22 (Count Four).

[5] *Id*. ¶¶ 71-73 [*sic*], at 22 (Count Five).

[6] Doc. no. 54 (Notice of Settlement of All Claims).

[7] *See* Defendant's Hearing Ex. 5 (Settlement Agreement and Full General Release) (filed under seal).  *Cf.* William E. Shreve, Jr., *Settling the Claims of a Minor*, 78 ALA. LAWYER 309 (2011).

employee of the store called the Huntsville Police Department to complain that plaintiff was disturbing customers by "panhandling," and had refused employee requests to leave. Defendant Christopher Glaser was the uniformed police officer dispatched to the store to deal with "a trespass in progress." After arriving at the scene, Glaser engaged plaintiff in conversation and attempted to conduct a "safety frisk" for weapons, but plaintiff "immediately balled up his fists and pulled away. His arm went up and blocked me from grabbing him."[8] Glaser then advised plaintiff that he was under arrest and "took him to the ground." While grappling with plaintiff, Glaser requested backup assistance through the use of a radio device clipped to his uniform's shirt. As the wrestling match continued, Glaser transmitted a plea for responding officers to "step up" their response. Glaser eventually shocked plaintiff with his Taser, in hopes of causing him to cease resisting , but even that had no effect.

2. When defendant Cameron Beatty and several other, unidentified police officers arrived on the scene, Hobbs still was wrestling with Glaser on the floor of the MAPCO store. The officers attempted to assist Glaser in subduing Hobbs, but he continued to resist all of their combined efforts. During the course of the ensuing, confused melee, one of the responding police officers — *but not either of the two officers named as defendants in plaintiff's amended complaint* — "stomped" one of Hobbs's legs (as well as one of the legs of Officer Glaser). Eventually, the officers

---

[8] *See* Defendant's Hearing Ex. 3 (Arrest Report).

collectively subdued Hobbs, and placed him in handcuffs. He was arrested for criminal trespass, obstructing governmental operations, resisting arrest, and transported to the City Jail for booking.[9] Hobbs then was 22 years old, and previously had been reported by his mother as a missing person.

3. Martin E. Weinberg, one of plaintiff's attorneys of record, informed defense counsel on May 20, 2024, that his client: was mentally- and intellectually-challenged; had been committed to a hospital managed by the Alabama Department of Mental Health; and, for those reasons, was unable to participate in written discovery or depositions.

4. The parties' first motion for appointment of a guardian *ad litem* was denied for counsel's failure to support the motion with "verifiable evidence from a mental health professional demonstrating that the party is being or had been treated for mental illness of the type that would render him or her legally incompetent."[10]

5. The parties' second motion for appointment of a guardian *ad litem* was supported by the statement of Dr. Walter Crook, a Psychiatrist on the staff of the Alabama Department of Mental Health, who diagnosed plaintiff as "mentally ill" due

---

[9] *Id.*

[10] Doc. no. 46 (*initial* Joint Motion to Appoint Guardian for Plaintiff); doc. no. 47 (Order) (denying foregoing Motion), at 1 (quoting *Scannovino v. Florida Department of Corrections*, 242 F.R.D. 662, 667 (M.D. Fla. 2007), in turn quoting *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 201 (2d Cir. 2003)); *see also* doc. no. 44 (Motion to Stay Discovery/Proceedings); doc. no. 45 (Order) (denying motion to stay discovery, and directing plaintiff's counsel to review Fed. R. Civ. P. 17(c), and the *Scannovino* opinion, *supra*).

to a "schizoaffective disorder and unspecified intellectual disability," and opined that he possessed only "limited insight into his mental illness or cognitive ability."[11] For those reasons, the motion was granted, and Edward E. Wilson, Jr. — an attorney jointly recommended by counsel — was appointed to serve as plaintiff's guardian *ad litem*.[12]

6. After conferring with plaintiff's mother, Kimberlyn Hayes, the parties' attorneys and guardian *ad litem* reached an agreement to resolve the litigation.[13] Specifically, they agreed to settle this case upon the payment by defendants to plaintiff the sum of $15,000.00 ("the Settlement Funds"): an amount that includes all fees, costs, or expenses to which plaintiff or his attorneys of record may be entitled under applicable law, but *not* the fees and expenses incurred by the guardian *ad litem* during the course of performing his duties in this case.[14] That resolution was made contingent upon: the execution of a settlement agreement containing a general release in favor of defendants; dismissal of all claims alleged in the amended complaint with prejudice; and, this court's approval of the settlement. It was further agreed that the

---

[11] Doc. no. 48 (*second* Joint Motion to Appoint Guardian for Plaintiff); and doc. no. 48-1 (Statement of Dr. Walter Crook, Psychiatrist). Dr. Crook added: "If Mr. Hobbs should become non-compliant with his medications and treatment, [he] would pose a threat to harm himself or others." *Id*. (alteration supplied).

[12] Doc. no. 49 (Order Appointing Guardian Ad Litem); *see also* Fed. R. Civ. P. 17(b) & (c).

[13] *See, e.g.*, doc. no. 54 (Notice of Settlement of All Claims).

[14] *See* doc. no 49 (Order Appointing Guardian Ad Litem), at 6 (stating that the fees and expenses of the "guardian *ad litem* shall be paid pursuant to, and are compensable at the current rate of, the Criminal Justice Act, 18 U.S.C. § 3006A(d)") (citations omitted).

payment of the Settlement Funds would resolve any and all claims that plaintiff, or anyone acting on his behalf, might have against the City of Huntsville, Officer Glaser, Officer Beatty, and any other person who could have been, but who was not, joined in this case as a defendant.

7. The guardian *ad litem* represented during the evidentiary hearing held on May 12, 2025, that Mr. Hobbs receives monthly Social Security disability benefits for which he might be disqualified if he were to receive the net proceeds of the proposed settlement in a lump sum.[15] Accordingly, the guardian *ad litem* recommended that the Settlement Funds, less the one-third amount to be paid plaintiff's attorney of record as reimbursement of his fees and expenses, be utilized to create a "Special Needs Trust" for Mr. Hobbs with the "Alabama Family Trust,"[16] and that he, Edward Wilson, the guardian *ad litem*, be appointed to serve as primary trustee, *pro bono*. Mr. Hobbs's mother, Kimberlyn Hayes, will be designated as successor trustee, and serve in the event Mr. Wilson is incapacitated, or can no longer serve as trustee.

8. The court heard evidence and conducted an independent examination of the facts of the occurrence made the basis of plaintiff's claims in an effort to determine whether the terms of the proposed settlement are conservative of the best interests of

---

[15] This representation was subsequently confirmed by a June 2, 2025 "Benefit Verification Letter" from the Social Security Administration stating that, since June 7, 2018, Kemontae Kentarieus Hobbs has been paid Supplemental Security Income payments as a disabled individual in the (current) amount of $967.00 a month.

[16] ALABAMA FAMILY TRUST, https://www.alabamafamilytrust.com/ (last visited June 12, 2025).

Kemontae Hobbs. The court inquired into the nature, duration, and extent of plaintiff's injuries and damages, as well as the liability of the defendants to Mr. Hobbs. Further, the court inquired into whether the guardian *ad litem* appointed in this case acted in good faith, and in the best interests of Hobbs when settling this case, and expressly finds that he did.

9. The court understands from the pleadings, evidence, and representations of counsel that there are genuine disputes as to liability. The parties agree that Mr. Hobbs suffered *minor* physical injuries as a result of the incident on which the suit is based, but none were sufficiently serious to require medical treatment. Mr. Hobbs has recovered fully.

10. After reviewing and considering the parties' settlement agreement and general release (Defendants' Hearing Ex. 5, filed under seal), the report of the guardian *ad litem* (Defendants' Hearing Ex. 6, filed under seal), the proposed Special Needs Trust for Kemontae Hobbs (a copy of which will be placed in the record under seal), and all of the evidence in this case, including the question of whether Mr. Hobbs would ultimately prevail, should the case proceed to jury trial, the court concludes that the proposed settlement is just, fair, reasonable, and conservative of the best interests of plaintiff, Kemontae Hobbs, and should be approved. Accordingly, it is **ORDERED, ADJUDGED, and DECREED** as follows:

(A)  The settlement agreement and general release previously executed by the parties is **APPROVED** and incorporated into this opinion.

(B)  In accordance with the parties' agreement, the City of Huntsville, Alabama, on behalf of itself and City of Huntsville Police Officers Christopher Shaun Glaser and Cameron Beatty, shall pay plaintiff, within seven (7) days of the date of the entry of this opinion, the sum of $15,000.00 by check drawn payable to Edward E. Wilson, Jr., as guardian *ad litem* for plaintiff.

(C)  The court hereby approves the payment of Five Thousand and No/100ths Dollars ($5,000.00) from the Settlement Funds to Martin E. Weinberg for his attorneys' fees and expenses in this matter.

(D)  The terms of the settlement agreement specifying that each party will bear his or its own attorneys' fees, costs, and expenses is approved by the court, but with this proviso:  a guardian *ad litem* fee of Two Thousand Seven Hundred Seventy-Two and 50/100ths Dollars ($2,772.50) is awarded to Edward E. Wilson, Jr.  The fee shall be paid by defendants separate from, and in addition to, the $15,000 Settlement Funds. The fee shall be paid to Mr. Wilson within seven (7) days of the date of the entry of this opinion.

(E)  Upon payment of the Settlement Funds to Mr. Wilson as guardian *ad litem* for Kemontae Hobbs, defendants will be released from any further liability arising out of the incident made the basis of this case.

(F) The court authorizes and directs Edward E. Wilson, Jr., to establish, within seven (7) days of the date of the entry of this opinion, with the Alabama Family Trust a Special Needs Trust for the benefit of Kemontae Hobbs, with Wilson as the *pro bono* primary trustee, and to advise the court when the Trust has been established.

(G) Upon receipt of notice from Edward E. Wilson, Jr., that he has established with the Alabama Family Trust a Special Needs Trust for the benefit of Kemontae Hobbs, with Wilson as the *pro bono* primary trustee, this court will enter a final Judgment dismissing all claims alleged in the amended complaint, with prejudice. Further, the final Judgment will recite that any and all claims that plaintiff, or anyone acting on his behalf, might have against the City of Huntsville, Officer Glaser, Officer Beatty, and any other person who could have been, but who was not, joined in this case as a defendant, will be deemed to have been merged into the judgment and forever barred.

(H) All parties **WAIVE** their right to appeal this opinion.

**DONE** and **ORDERED** this 18th day of June, 2025.

_____
Senior United States District Judge